IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RICKEY RICHARDSON, ET AL., )
)
        Plaintiffs, )
vs. ) NO. CIV-10-0047-HE
)
WATCO COMPANIES, INC., ET AL., )
)
        Defendants. )

# ORDER

In this case, plaintiffs Rickey Richardson, Pat Massey, Stacey Dennis, and Jaysen Kerr assert claims against defendants Watco Companies, Inc. ("Watco"), Watco Transportation Services, Inc. ("WTS"), Stillwater Central Railroad, Inc. ("SCRI"), and Richard Webb, arising out of the alleged wrongful discharge of Richardson and Massey and constructive discharge of Dennis and Kerr. Plaintiffs' original complaint included a tort claim based on Oklahoma's public policy exception to the "at will" doctrine (a "Burk tort"). The court dismissed that claim on the basis that recovery under that doctrine is limited to "at will" employees and that the complaint stated no basis for concluding plaintiffs had that status. Order, May 12, 2010 [Doc. #35]. Plaintiffs have since filed an amended complaint which seeks to remedy that deficiency, in addition to re-asserting their other claims under federal and state law. Defendants have now moved to dismiss certain of the claims. Plaintiffs have responded and the motion is at issue.[1]

---

[1] *Plaintiffs' response brief [Doc. #53] violates LCvR 5.2(a), which addresses line spacing and font size. Any such future effort to evade the page limitations imposed by the court's rules will result in the offending document being stricken.*

Defendants' present motion seeks to dismiss Counts I, IV, V, VII, VIII and IX pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6). It also seeks to dismiss Counts II and III as to the claims of plaintiffs Dennis and Kerr. Plaintiffs have since filed an agreed statement [Doc. #54] acknowledging that their claims based on 45 U.S.C. § 152 (first) should be deemed dismissed (Counts I and IV). It further acknowledges that the claims of Dennis and Kerr under the RLA (to which defendants had objected on statute of limitations grounds) should be deemed dismissed.[2] After giving effect to the parties' agreed statement, the remaining issues raised by defendants' motion relate to their challenges to plaintiffs' various state law claims (i.e. Burk tort, defamation, and intentional infliction of mental distress). The standards for motions under Rule 12(b)(1) and 12(b)(6) are familiar and will not be repeated here.

**Background**

Plaintiffs are alleged to be former joint employees of SCRI and Watco. According to the Amended Complaint, plaintiffs and other employees sought to unionize through the Brotherhood of Maintenance of Way Employees Division ("BMWED") and other unions during the period from 2005 to 2009. Plaintiffs allege the defendants strongly resisted, in various ways, the efforts to unionize but that, in January 2008, the National Mediation Board ("NMB") certified BMWED as the official representative of the maintenance of way employees at SCRI. The complaint states that, in August 2008, after BMWED's

---

[2]*The agreed statement also states that plaintiffs' claims for libel, slander, and defamation should be viewed as a single claim for defamation.*

2

certification, BMWED and SCRI entered into a collective bargaining agreement ("CBA") that became effective on January 1, 2009. The CBA provided, in part, that the maintenance of way employees at SCRI could not be terminated without "just cause." Plaintiffs allege that, as of contract signing in late August 2008, defendants "had no intention of creating a binding contract . . ." [Amend. Comp. ¶¶ 78-79] and intended to fire or force out the plaintiffs for their union activities notwithstanding the terms of the CBA. The complaint sets out detailed allegations directed to the assertion that, while plaintiffs expected the defendants to comply with the CBA, defendants did not do so and had no intention of doing so at the time the agreement was entered into. [Amend. Comp. ¶¶ 77-108]. It also alleges that defendants engaged in multiple violations of the CBA and of federal and state law designed to force plaintiffs out of their jobs. [Amend. Comp. ¶¶ 44-108]. Plaintiffs contend these actions eventually led to the firing of Richardson and Massey for what defendants falsely labeled as "gross misconduct" and led to Dennis and Kerr resigning. [Amend. Comp. ¶¶ 43, 53, 69, 154].

## Discussion

### Burk tort claim

Plaintiffs reassert their claims for wrongful and constructive discharge pursuant to Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1998), asserting that, notwithstanding the CBA, they were "at will" employees. They rely on their additional allegations that the CBA was fraudulently induced through false representations by defendants, who allegedly never

3

intended to honor it or be bound by it, and that it was therefore void and of no effect.[3] It is not altogether clear whether plaintiffs rely on federal or Oklahoma law as the basis for their argument that fraud in the inducement renders the CBA a nullity. However, the court assumes for present purposes (in the context of deciding the availability of an Oklahoma cause of action) that Oklahoma law provides the appropriate standard and Oklahoma law recognizes that fraud in the formation of a contract "vitiates everything it touches," rendering a contract voidable. Bowman v. Presley, 212 P.3d 1210, 1220 (Okla. 2009). Further, the court concludes plaintiffs have alleged facts here sufficient to state a plausible claim as to fraud in the inducement, hence avoiding the impact of the CBA on their employment status.[4] The amended complaint thus states a Burk tort claim, assuming that the invalidity of the CBA can be determined in this proceeding.[5]

---

[3]*Plaintiffs also argue that employees subject to firing for "just cause" may nonetheless pursue a Burk tort and that, even if that is not the law, that result would be more "sensible." In fact, Oklahoma law is very clear that the Burk tort includes a requirement that an employee asserting such a claim be "at will." See Reynolds v. Advance Alarms, Inc., 232 P.3d 907, 909 (Okla. 2009); McCrady v. Okla. Dep't. of Public Safety, 122 P.3d 474, 474-75 (Okla. 2005). It is not for this court to decide on some more "sensible" approach to the nature of a state claim even if it was persuaded by plaintiffs' argument (which, as to this point, it is not).*

[4]*To be sure, plaintiffs' somewhat extraordinary position raises a number of unusual factual and legal questions, but, viewing the allegations in the light most favorable to the plaintiffs as the present posture of the case requires, the court concludes they have pleaded themselves out of the "at will" problem.*

[5]*The parties have not separately addressed the issue of Burk tort liability of defendant Webb, who is alleged to be the CEO and principal shareholder of the corporate defendants. However, while the Oklahoma Supreme Court has not definitively resolved the issue, other Oklahoma appellate courts as well as this and other federal courts have concluded the Burk liability does not extend to individuals who are not the employer of the plaintiff. Fulton v. People Lease Corp., No. 106675, 2010 WL 3491943, at \*3 (Okla. Civ. App. Mar. 5, 2010); Eapen v. McMillan, 196 P.3d 995, 997-98 (Okla. Civ. App. 2008); Hall v. YMCA of Greater Tulsa, No. 09-CV-630, 2010 WL 2196554,*

Defendants argue, however, that this court lacks jurisdiction to determine whether the CBA was validly entered into or should be deemed void. They argue that the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-164 (2006), preempts any such effort. In particular, they rely on the RLA's provisions for mandatory arbitration of "minor disputes" before the National Railroad Adjustment Board ("NRAB"), noting that if the dispute is "minor", then the arbitrator has exclusive jurisdiction and the federal courts lack jurisdiction to resolve the claim.

Defendants have correctly described, in general, the law in this area. The RLA "establishes an arbitral remedy for the resolution of 'disputes between an employee . . . and a carrier . . . growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" Fry v. Airline Pilots Ass'n, Int'l, 88 F.3d 831, 835 (10th Cir. 1996) (internal citation omitted). Whether or not this arbitral remedy is mandatory for the parties to a CBA depends upon whether the dispute at hand is "major" or "minor." *See* Brotherhood of Maintenance of Way Employees Div. v. Burlington Northern Sante Fe Ry. Co., 596 F.3d 1217, 1222 (10th Cir. 2010). The NRAB has exclusive jurisdiction over "minor" disputes. Union Pacific R.R. v. Sheehan, 439 U.S. 89, 94 (1978) ("Congress considered it essential to keep these . . . 'minor' disputes within the Adjustment board and out of the courts."). Conversely, if a dispute is "major," the dispute

---

*at \*4 (N.D. Okla. May 26, 2010); Cochlin v. Dobson Comm. Corp., No. CIV-06-0032-HE, 2007 WL 852560, at \*1 (W.D. Okla. Mar. 16, 2007). The complaint does not state a claim against Webb based on Burk.*

5

is generally not subject to the NRAB, but rather is subject to resolution in federal court. Brotherhood of Maintenance of Way Employees Div., 596 F.3d at 1222.

The Supreme Court has provided guidance for distinguishing between major and minor disputes. Id. (citing Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989)). In general, "[m]ajor disputes relate to the *formation* of collective [bargaining] agreements." Id. (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994)) (emphasis added). In contrast, "'minor disputes' seek to '*enforce* [contract rights].'" Id. (citing Consol. Rail Corp., 491 U.S. at 302) (emphasis added). "The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." Davies v. American Airlines, Inc., 971 F.2d 463, 465 (10th Cir. 1992) (citing Consol. Rail Corp., 491 U.S. at 305). In other words, the main inquiry is "whether the source of a party's asserted legal right is its collective bargaining agreement." Brotherhood of Maintenance of Way Employees Div., 596 F.3d at 1223.

Here, the availability of the Burk tort turns on issues involving the formation of the agreement—whether the CBA was validly entered into at all. The rights plaintiffs assert in this regard cannot be determined by interpreting the CBA. Accordingly, the court views the availability of a Burk tort in this context as involving a "major", rather than "minor", dispute. *See* Davies, 971 F.2d at 465-66 (plaintiff's Burk action did not require interpretation of the

6

CBA and was therefore not preempted).[6] As such, the RLA does not preempt this court's consideration of what is essentially a fraud claim as a building block upon which the Burk tort depends.[7] Defendants' motion to dismiss will therefore be denied as to plaintiffs' claims based on Burk.[8]

**Richardson's Claims for Defamation and Intentional Infliction of Emotional Distress**

Defendants also move to dismiss plaintiff Richardson's defamation (Counts VII and VIII) and intentional infliction of emotional distress ("IIED") (Count IX) claims on the basis they are preempted by the RLA and by ERISA.

Defendants argue, similar to their Burk tort argument, that Richardson's defamation and IIED claims are preempted by the RLA because the court would need to interpret the CBA in order to resolve these claims. [Doc. # 49, pp. 19, 22]. While defendants' RLA preemption argument appears to be correct if the validity and existence of the CBA are assumed,[9] plaintiffs' assertion of fraud in the inducement of the CBA puts that assumption

---

[6]*Davies*' prediction that the Oklahoma courts would allow a Burk tort for employees subject to discharge only for "just cause" proved to be incorrect, as noted above. See *Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1198 n. 10 (10th Cir. 2010), noting that "recent decisions by Oklahoma courts have strictly enforced the at-will requirement . . . ." However, *Davies*' characterization of a potential Burk tort as involving a "major" dispute for purposes of RLA preemption is what is pertinent to the present circumstances.

[7]*It is not altogether clear to the court what additional practical advantage would accrue to a plaintiff from asserting a Burk tort if the plaintiff already had a successful fraud claim available to it.*

[8]*Except as to defendant Webb. See note 5 above. There also appear to be unaddressed issues as to whether a basis for a claim has been stated against* all *the corporate defendants.*

[9]*As defendants suggest, it appears a determination of whether their characterization of the basis for Richardson's termination was accurate would necessarily involve interpretation of the*

in issue. It is therefore premature to conclude that the RLA necessarily preempts these state law claims.

Defendants also argue that Richardson's defamation and IIED claims are preempted by ERISA, because the claims allegedly "relate to" Richardson's employee benefit plan. *See* 29 U.S.C. § 1144(a) (2006). Section 1444(a) provides that ERISA "shall supercede any and all State laws insofar as they . . . relate to any employee benefit plan . . . ."Id.; *see* Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). The Tenth Circuit has identified four types of claims that "relate to" a benefit plan for purposes of ERISA preemption. Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999). The one closest to the present circumstances is that for "laws and common-law rules providing remedies for misconduct growing out of the administration of such plans." Id. "While the scope of ERISA preemption may be broad, it is certainly not boundless." Id. ERISA does not preempt those state law claims "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." Felix v. Lucent Technologies, Inc. 387 F.3d 1146, 1154 (10th Cir. 2004) (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n. 1 (1992)) (internal quotations omitted).

Here, Richardson claims that the manner in which his termination was carried out—discharge for what was termed "gross misconduct"—defamed him and was intended

---

*CBA. See CBA Art. 15, [Doc. #11-2] (CBA provides that whether something constitutes serious misconduct depends upon a fair and impartial investigation by SCRI).*

to inflict emotional harm. [Amend. Comp. ¶¶ 165 & 177]. Defendants contend that such claims "relate to" Richardson's COBRA coverage and are therefore preempted by ERISA.

While the question is close, the court concludes otherwise. Richardson's defamation and IIED claims arise out of the same factual setting as his ERISA claim but are not, in the court's view, necessarily related to it.[10] The defamation claim is based on defendants putting "the gross misconduct label in his records," a characterization the defendants "knew [] to be false." [Amend. Comp. ¶¶ 166-67]. The denial of COBRA coverage was merely one of the effects of the alleged tort. Similarly, Richardson's IIED claim rests upon the defendants making "the false representation with full knowledge and intent that the statements would cause substantial emotional distress on [p]laintiff Richardson." [Amend. Comp. ¶ 177]. In short, Richardson's defamation and IIED claims rest squarely upon the defendants' statement that Richardson acted with "gross misconduct." As such, and though the claims arise from the same factual setting as Richardson's ERISA claim, they are not related to them in such a way as warrants preemption.

Defendant's motion to dismiss Richardson's defamation and IIED claims on the basis of RLA and ERISA preemption will be denied.

## Conclusion

Defendants' partial motion to dismiss [Doc. # 49] is **GRANTED IN PART** and

---

[10]*See generally* <u>Clark v. Coats & Clark, Inc.</u>, *865 F.2d 1237 (11th Cir. 1989), where the employee sued on the basis that "his employment termination was carried out in a manner which was intended to inflict severe emotional distress upon him."* <u>Id.</u> *at 1243. The court concluded that even though the employee's claim arose out of the same factual setting, it was not related in content or otherwise tied to the ERISA claim so as to make it "related."*

9

**DENIED IN PART**. Pursuant to the agreement of the parties, it is granted as to Claims I and IV as to all Plaintiffs and Claims II and III as to plaintiffs Dennis and Kerr. The motion is also granted insofar as plaintiff purports to state a <u>Burk</u> tort against the individual defendant, Richard Webb. These claims are dismissed without prejudice. The motion is otherwise **DENIED**.

    **IT IS SO ORDERED**.

    Dated this 1st day of November, 2010.

                                       JOE HEATON
                                       UNITED STATES DISTRICT JUDGE