# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RICKEY RICHARDSON, ET AL., )
)
        Plaintiffs, )
)
vs. ) NO. CIV-10-0047-HE
)
WATCO COMPANIES, INC., ET AL., )
)
        Defendants. )

## **ORDER**

      As discussed more fully in the court's prior order,[1] plaintiffs have brought claims against defendants arising out of their terminations of employment. Both federal and state law claims are asserted. In general, plaintiffs assert wrongful conduct by defendants designed to thwart and/or punish plaintiffs' efforts to unionize and be represented by the Brotherhood of Maintenance of Way Employees Division ("BMWED"). Defendants have now moved for summary judgment on all claims. The motion is fully briefed and at issue.

      The standard for summary judgment is familiar. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Viewing the evidence and any reasonable inferences that might be drawn in the light most favorable to the plaintiff, the nonmoving party, Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007), the court concludes the motion should be granted in part.

      A detailed recitation of the facts is unnecessary, as the bulk of the issues pertinent to

---

[1]*Order, Nov. 1, 2010 [Doc. #74].*

this motion turn on questions of law. Plaintiffs are former employees who worked as maintenance of way workers for SCRI, a short-line railroad that is a subsidiary of Watco Companies Inc. ("Watco"). In early January 2008, BMWED was certified as the authorized representative for MW Team Members at SCRI. Soon thereafter, collective bargaining between the BMWED and SCRI began and by August 29, 2008, the BMWED and SCRI had signed a collective bargaining agreement ("CBA").

Subsequent to the CBA taking effect, the plaintiffs' employment with SCRI ended. On July 27, 2009, Plaintiff Richardson was notified that he was being terminated for "serious rules violations" of railroad safety rules. It is undisputed that Heather Webb, Watco benefits administrator, emailed Power Group, which administers the COBRA benefits on behalf of Watco, stating Richardson should not receive COBRA benefits because he was terminated "for gross misconduct." Thereafter, Richardson was denied COBRA benefits. Richardson disputes that he was terminated for "gross misconduct."

The facts regarding plaintiff Massey's termination are disputed. While both parties agree that Massey was not present for work between October 26 and October 28 of 2009, they dispute whether Massey was a no-call/no show, as the defendants claim, or whether he was taking vacation of which his supervisor and co-workers were aware, as the plaintiffs argue.

Plaintiff Kerr admits that beginning around October or November of 2008, he missed thirteen of twenty-nine days of work, for which he received verbal counseling, a written warning, and then a final written warning about his absenteeism. Kerr also missed additional

2

days in late January and early February, but it is disputed whether those absences were excused/justified. Defendants offer evidence that, on February 11, 2009, SCRI terminated Kerr's employment due to excessive absenteeism.[2]

Around December 30, 2008, plaintiff Dennis used his company truck to move a second company truck that was in a parking space he desired. After an investigation and hearing into the incident, SCRI suspended Dennis for thirty days. On January 26, 2009, Dennis called his supervisor, Gabe Larkin, and informed him that he was resigning, though the motive for him doing so is disputed.

Plaintiffs provide evidence suggesting the reason for the terminations of Richardson, Massey, and Kerr and for the alleged constructive discharge of Dennis was defendants' anti-union animus and their objection to plaintiffs' unionizing activities.

## DISCUSSION

Defendants challenge, on various grounds, plaintiffs' claims under both state and federal law. With respect to plaintiffs' state law claims, the court concludes judgment should be entered for defendants.

Plaintiffs assert a Burk tort, claiming their terminations were in violation of Oklahoma's public policy. As the court has previously noted, a Burk tort is available only to an "at will" employee. *See* McCrady v. Okla. Dep't of Pub. Safety, 122 P.3d 473, 476 (Okla. 2005). Defendants previously sought dismissal of plaintiffs' Burk claim(s) on the

---

[2]*Previous filings by plaintiffs allege Kerr was constructively discharged rather than terminated, see Doc. #37, but they fail to substantially contest this issue in their response.*

3

basis that the CBA existed and plaintiffs were not "at will" employees. The court initially dismissed on that basis, (Order, May 12, 2010 [Doc. #35]), but permitted plaintiffs to amend. They did so, alleging that the CBA was induced by fraud and was hence void and of no effect. On that basis, and applying principles of state law, the court then concluded that plaintiffs had alleged a sufficient basis for avoiding the issue of "at will" status. Defendants now urge that the ground for recovery alleged by defendant (i.e. which avoids the "at will" problem) necessarily involves a determination that is preempted by federal law. The court agrees.

The Supreme Court outlined the basic tenets of federal preemption in these circumstances in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). The Court held that, in the context of the National Labor Relations Act ("NLRA"), state laws are presumptively preempted if they concern conduct that is actually or arguably protected or prohibited by the Act. Id. at 245. This analysis has been extended to conduct that is governed by the Railway Labor Act ("RLA"), which plaintiffs rely on in this case. *See, e.g.*, Bhd. of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 369, 383-84 & n. 19 (1969). *See also* Peterson v. Air Line Pilots Assoc., Intern'l., 759 F.2d 1161, 1168-69 (4th Cir. 1985) (finding plaintiff's state law wrongful discharge claim preempted by the RLA, and noting that "the preemption of state law claims under the RLA has been more complete" than under the NLRA). Plaintiffs rely on fraud and bad faith in the negotiations leading to the CBA as a substantial part of the basis for their wrongful discharge claims. Such alleged conduct is at the core of that which is regulated by the RLA, including the selection of representatives

4

and the protection of collective bargaining without interference or impediments to that process by employers. The court therefore concludes that any claim under Burk is, in the circumstances of this case, preempted by federal law.

Plaintiff Richardson also asserts a state law claim for intentional infliction of emotional distress. In order to establish such a claim, a plaintiff must show (1) the defendant acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). Here, the court concludes that, even assuming the accuracy of plaintiffs' version of the facts, the conduct attributed to defendants does not reach the status of "outrageousness" required under Oklahoma law[3] and that plaintiffs' proof is insufficient to create a material issue of fact as to whether plaintiff suffered severe emotional distress. *Compare* Defendants' Summary Judg. Mot. [Doc. #97 ("26. Mr. Richardson admits that the alleged defamatory statement did not cause him to suffer emotional distress.")] *with* Plaintiffs' Response [Doc. #107 ("Plaintiffs do not dispute Defendants' numerical facts . . . 26 . . . .")].

Plaintiff Richardson also asserts a claim for defamation, arguing that defendants defamed him when Heather Webb, the benefits administrator for Watco, sent an e-mail to the

---

*[3]The court acts as the gatekeeper with regards to the "outrageousness" element, which requires "proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." Computer Publications, Inc., 49 P.3d at 735-36. No such conduct occurred here.*

5

entity which administered COBRA on behalf of Watco. She stated plaintiff should not receive COBRA coverage because he was fired "for gross misconduct." Defendants seek judgment on the basis that the making of such a statement to their agent does not involve the "publication" necessary for a claim for defamation (i.e. the "intra-corporate privilege"). The court agrees. "Communications inside a corporation between its officers, employees, and *agents*, is never a publication for the purposes of actions for defamation." Thorton v. Holdenville Gen. Hosp., 36 P.3d 456, 460 (Okla. Civ. App. 2001) (emphasis added) (citing Magnolia Petroleum Co. v. Davidson, 148 P.2d 468, 471 (Okla. 1944)). This privilege has been applied in cases involving third-parties who were contractually bound to act on the other parties' behalf (i.e. agents). *See* id. at 460-61. There is no dispute that Power Group was responsible for administering COBRA coverage on behalf of Watco. As it was acting as Watco's agent for that purpose, there was no "publication" such as is required for a defamation claim. Consequently, defendants' motion will be granted as to the defamation claim.[4]

Accordingly, the court concludes defendants' motion should be granted as to plaintiffs' claims arising under state law. Defendants' motion for summary judgment [Doc. #96] is **GRANTED IN PART** as to the state law claims. With respect to the federal claims, the court concludes argument of counsel would be helpful to the resolution of those issues.

---

[4]*The court is unpersuaded by plaintiff's effort to base a defamation claim on his own statements to prospective employers. As plaintiffs concede, Oklahoma has yet to recognize an action for defamation based on self-publication. See* Starr v. Pearle Vision, Inc., *54 F.3d 1548, 1554 (10th Cir. 1995).*

If this case is not resolved in the meantime,[5] defendants' motion is set for oral argument on **April 27, 2011, at 1:30 p.m**., in Courtroom No. 304, directed to the remaining federal claims.

**IT IS SO ORDERED**.

Dated this 19th day of April, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[5]*The court notes that this case is set for settlement conference on April 20, 2011.*